**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| RYAN BILLENSTEIN, ) | CASE NO. 3:15CV1097 |
| ) | |
| Petitioner, ) | JUDGE BENITA Y. PEARSON |
| ) | |
| v. ) | MAGISTRATE JUDGE VECCHIARELLI |
| ) | |
| WARDEN, WARREN CORRECTIONAL ) | |
| INSTITUTION, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Respondent. ) | |

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the Court is the petition of Ryan Billenstein ("Billenstein" or "Petitioner"), for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction and sentence in the case of *State of Ohio vs. Billenstein*, Mercer County Court of Common Pleas Case No. 12-CRM-100. For the following reasons, the magistrate judge recommends the petition be DISMISSED.

## I. Introduction

The trial court, in a "Stipulation of Facts on No Contest Plea," made the following findings of fact:

> On or about July 14, 2012, at about 0242 central dispatch received a call reporting an erratic driver on U.S. 127. While enroute to check this call, Coldwater Police Department advised me they just had a traffic stop with a vehicle that matched that description. They believed this to be the same vehicle. The car stopped in Coldwater at Fifth and Main and warned [sic] for lanes of travel violation.
>
> At 0258 central dispatch received several calls reporting a vehicle involved in a crash at 4949 Lange Road, Mercer County Ohio. Deputies were dispatched to the location.
>
> Deputies arrived on the scene to see a vehicle fully engulfed in flames. St. Henry Fire Department was on the scene. There were also EMS personnel on scene attending to a victim on the grass to the south of the vehicle fire. The victim, later identified as Craig A. Gengler, was pronounced dead at the scene.
>
> The fire was extinguished. There was a body in the back seat of the vehicle. The body was badly burned and had no recognizable features. The decedent was later identified as Vincent Gragorace.
>
> The investigation revealed the driver of the motor vehicle was Ryan J. Billenstein. Bethany Wentworth stated she was seated in the right front passenger seat. Craig was seated just behind her and Vince was behind Ryan. Billenstein was traveling at a high rate of speed. Bethany remembered Billenstein losing control and she heard a crunch. The car then left the roadway and crashed.
>
> Bethany's injuries included fractures in her C-5 and C-6 section of her spine, fractures in her lombard curvature, fractures in her tailbone and right hip fractures and her clavicle may have a hairline fracture.
>
> Deputy Darrell Etgen arrived at Mercer Health to speak with Billenstein. Deputy Etgen read Billenstein his Miranda warning and Patrolman Speckman, Coldwater Police Department, and the lab technician witnessed the reading of the Miranda. Billenstein consented to provide a blood and urine sample and allowed the lab technician to draw his blood sample and urine sample. The blood and urine sample were placed in a box with the chain of custody and transported the box back to the Mercer

> County Sheriff's Office. The box was placed in the refrigerator until it could be sent to the Ohio State University laboratory for results.
>
> The Ohio State University Medical Center Clinical Laboratories completed their analysis of the blood sample and conclude that Billenstein had a concentration of one hundred ten hundreths (0.110) of one percent by weight per unit volume of alcohol in Billenstein's whole blood.
>
> The Ohio State University Medical Center Clinical Laboratories have completed their analysis of the urine sample and conclude that Billenstein had concentration of 297 ng/ml Marijuana Metabolite.

(Doc. No. 9-1 at Ex. 11.)[1]

## II. State-Court Proceedings

### A. Indictment and No Contest Plea

On August 16, 2012, the Mercer County Grand Jury indicted Billenstein on the following charges: two counts of aggravated vehicular homicide in violation of Ohio Rev. Code § 2903.06(A)(1)(a); (B)(1)(2)(a), a second-degree felony (Counts One and Two); two counts of aggravated vehicular homicide in violation of Ohio Rev. Code § 2903.06(A)(2)(a); (B)(1)(3), a third-degree felony (Counts Three and Four); one count of aggravated vehicular assault in violation of Ohio Rev. Code § 2903.08(A)(1)(a); (B)(1), a third-degree felony (Count Five); one count of vehicular assault in violation of Ohio Rev. Code § 2903.08(A)(2)(b); (C)(1)(2), a fourth-degree felony (Count Six); one count of operating a vehicle while under the influence of alcohol and/or drugs of abuse in violation of Ohio Rev. Code § 4511.19(A)(1)(a); (G)(1)(a)(i), a first-degree misdemeanor (Count Seven); one count of operating a vehicle while under the influence of alcohol

---

[1] This stipulation stated that Billenstein would deny these facts at trial but entered into the stipulation solely for the purpose of his no contest plea. (Doc. No. 9-1 at Ex. 11.)

3

and/or drugs of abuse in violation of Ohio Rev. Code § 4511.19(A)(1)(b); (G)(1)(a)(i), a first-degree misdemeanor (Count Eight); and one count of operating a vehicle while under the influence of alcohol and/or drugs of abuse in violation of Ohio Rev. Code § 4511.19(A)(1)(j)(vii); (G)(1)(a)(i), a first-degree misdemeanor (Count Nine). (Doc. No. 9-1 at Ex. 1.) Billenstein entered a plea of not guilty. (Doc. No. 9-1 at Ex. 2.)

On October 9, 2012, Billenstein, through counsel, filed a motion to suppress. (Doc. No. 9-1 at Ex. 3.) In it, he requested that the court suppress: (1) "the arrest and observations" of the arresting officer, because, he claimed, the officer lacked a reasonable suspicion to stop and detain him and did not perform a field sobriety test correctly; (2) the results of the tests of his blood, which he contended were administered in violation of Ohio law; and (3) any statements Billenstein made pursuant to the allegedly illegal arrest or before he was advised of his *Miranda* rights. (*Id.*) Billenstein amended the motion on October 17, 2012, to add a request to suppress results of a urine test. (Doc. No. 9-1 at Ex. 4.) The State opposed the motion. (Doc. No. 9-1 at Ex. 7.) After conducting a hearing on November 29, 2012, the trial court denied Billenstein's motion on January 14, 2013. (Doc. No. 9-1 at Ex. 8.)

At a hearing on March 27, 2013, the parties entered into a negotiated plea agreement. (Doc. No. 9-1 at Ex. 10.) Pursuant to that agreement, Billenstein changed his plea to no contest to Counts One and Two, of aggravated vehicular homicide; Count Five, of aggravated vehicular assault; and Count Seven, of operating a vehicle while under the influence of alcohol and/or drugs of abuse. (Doc. No. 9-1 at Exs. 9,10, 13.) The State dismissed the remaining counts of the indictment. (Doc. No. 9-1 at Exs. 10, 12.) The court accepted Billenstein's no contest plea. (Doc. No. 9-1 at Ex. 13.) The

4

court also issued a "Stipulation of Facts on No Contest Plea." (Doc. No. 9-1 at Ex. 11.)

The trial court conducted a sentencing hearing on May 1, 2013. (Doc. No. 9-1 at Ex. 14.) It sentenced Billenstein to a total of thirteen years' imprisonment, including five years for Count One, five years for Count Two, and three years for Count Five, to be served consecutively; and six months for Count Seven, to be served concurrently with the other counts. (*Id.* at 53-54.)

**B.    Direct Appeal**

Billenstein, through new counsel, filed a timely notice of appeal in the Mercer County Court of Appeals on May 29, 2013. (Doc. No. 9-1 at Ex. 15.) In his appellate brief, he asserted the following assignments of error:

1. The trial court erred by failing to suppress in-custody statements of Appellant made to Officer Speckman in the emergency room.

2. The trial court erred by failing to orally advise the Appellant that Counts One, Two, and Five of the indictment require a mandatory term of incarceration.

3. The trial court erred by failing to orally advise the Appellant he would be ineligible for community control and judicial release.

4. The trial court erred by failing to advise the Appellant regarding the elements of post release control.

5. The trial court erred by failing to advise the Appellant regarding the mandatory operator's license suspensions.

6. The trial court erred by imposing consecutive sentences because the record does not support a finding of any of the criteria set forth in ORC Section 2929.14(C)(4).

7. The Appellant received ineffective assistance of counsel at the trial court because his counsel failed to include in the motion to suppress a branch relating to the violation of

5

> Appellant's Miranda [*sic*] rights and the invalidity of Appellant's subsequent consent for a blood and urine sample.

(Doc. No. 9-1 at Ex. 16, 63.) The State responded on September 23, 2013. (Doc. No. 9-1 at Ex. 17.) Billenstein replied on September 30, 2013. (Doc. No. 9-1 at Ex. 18.)

On January 27, 2014, the state appellate court affirmed in part and reversed in part the judgment of the trial court. *State v. Billenstein*, No. 10-13-10, 2014-Ohio-255, 2014 WL 295850, at *18. (Doc. No. 9-1 at Ex. 19.) The court held that the trial court erred in imposing consecutive sentences without making certain statutorily required findings and remanded to the trial court to make the proper findings, if they existed, for the imposition of consecutive sentences. *Billenstein*, 2014 WL 295850, at **16-17.

Billenstein, again through new counsel, filed a timely notice of appeal in the Ohio Supreme Court on March 13, 2014. (Doc. No. 9-1 at Ex. 20.) In his memorandum in support of jurisdiction, he raised the following two propositions of law:

> 1. A suspect is in custody for purposes of *Miranda* when the police escort him to the hospital and closely observe ongoing medical treatment for purposes of an impaired driving investigation, even though they do not formally place the suspect under arrest. Any reasonable person under these circumstances would not feel free to leave.
>
> 2. It is ineffective assistance of counsel not to contest the validity of a defendant's *Miranda* waiver and consent for chemical testing, where the defendant is in the hospital, escorted by law enforcement officers, and being treated for a severe injury.

(Doc. No. 9-1 at Ex. 21, 252.) The State responded on April 11, 2014. (Doc. No. 9-1 at Ex. 22.)

The Ohio Supreme Court declined jurisdiction of the appeal on June 11, 2014. (Doc. No. 9-1 at Ex. 23.) Billenstein did not further appeal that judgment.

6

**C.     Resentencing**

The trial court conducted a resentencing hearing, pursuant to the state appellate court's remand, on July 23, 2014. (Doc. No. 9-1 at Ex. 24.) On May 1, 2013, the court reimposed Billenstein's former sentence. (*Id.*)

### III.   Proceedings in this Court

On May 27, 2015, Billenstein, *pro se*, filed a petition for writ of habeas corpus in the District Court for the Southern District of Ohio. (*See* Doc. No. 1.) The case was transferred to this Court on June 1, 2015. (Doc. No. 2.)

In his petition, Billenstein asserts the following two grounds for relief:

1.     Cumulative errors throughout proceedings caused Petitioner denial of the due process guaranteed by the Constitution of the United States.

Supporting Facts: The State of Ohio via its judicial system utilized semantics in its one-sided position by holding that Petitioner was not subject to custodial interrogation despite the fact that Petitioner was not initially made to believe that he was permitted to leave the area where the interrogation transpired. During the interrogation, one police operative was stationed outside the hospital room, giving Petitioner the firm belief that he was stationed there to prevent Petitioner from leaving the area, while the presence of two additional officers supported Petitioner's belief that he was under arrest. The adroit chicanery on the part of the police operatives was designed to promote a confession, albeit involuntary which is in contravention to sound due process protections. Other instances of cumulative errors that were downplayed by the state judicial operatives were that the trial court failed to advise Petitioner about penalties associated with Petitioner's plea which was not made knowingly or intelligently regardless how semantics and efforts of desensitization play a factor. The fact is that for any plea of guilty to be lawful, the criminal defendant must know what will happen to him or her as a result of pleading guilty. This includes every penalty or aspect of punitive measures. When a defendant is not aware of such terms, penalties, or punishment, the plea cannot be said to be one of good faith. While some may wish to conclude that Petitioner's position in this regard involves minutia, prudence will recognize it as the law.

7

> 2. Petitioner was denied the meaningful, effective assistance of counsel as guaranteed in the Sixth Amendment of the Constitution of the United States.
>
> <u>Supporting Facts</u>: As stated earlier, these were assignments of error presented in the state judicial proceedings: ***Failure to Suppress, Failure to advise that certain counts carried Mandatory Term of Incarceration, Failure to Orally Advise that Petitioner would be ineligible for Judicial Release, Failure to Advise regarding Elements of Post-Release Control and Mandatory Operator's License Suspensions, Unlawful Imposition of Consecutive Sentences, Ineffective Counsel regarding violation of Miranda warnings.*** While the Respondent may argue that many of these errors or idiosyncrasies were based upon state law or application of state law, a reasonable lawyer, acting with the degree of skill to be constitutional, would have known that these violations individually and collectively rendered the representation of Petitioner nothing more than a meaningless *pro forma* ritual. Just as it takes only one tiny speck of blood of the HIV virus to contaminate an entire blood stream, the speck of unlawfulness that rendered any statement or confession involuntary would have been recognized had Petitioner's lawyer properly advanced, *inter alia*, the *Miranda* issue as it applies to what this Court routinely calls a "custodial interrogation." But for the cumulative actions of Petitioner's lawyer, Petitioner would have received a just result in a matter for which the average criminal defendant would have receive [*sic*] not more than two years at best under similar circumstances, if not probation.

(Doc. No. 1 at 5, 6 (emphasis original).)

The State filed a return of writ on September 24, 2015. (Doc. No. 9.) Billenstein did not respond.

### IV. Procedural Issues

**A.  Jurisdiction**

A state prisoner may file a federal habeas petition only in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Mercer County, Ohio, sentenced Petitioner.

(Doc. No. 9-1 at Ex. 24.) Mercer County is within this Court's geographic jurisdiction. *See* 28 U.S.C. § 115(a).

**B. Exhaustion and Procedural Default**

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. See 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *See Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990). If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and, generally, a federal court must dismiss his petition. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Where, however, there are no longer any state court remedies still available to a petitioner with respect to a particular claim, this Court may deem that claim procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' *Engle v. Isaac,* 456 U.S. 107, 125, n.28 (1982), it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law,' *Castille*[, 489 U.S. at 351].").

Generally, a federal court must decline to review "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner "has defaulted his federal claims in state court pursuant to an

9

independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

If the State argues that a petitioner has procedurally defaulted a claim, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction.  . . . Third, the court must decide whether the state procedural forfeiture is an  "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).

### 1. Petitioner's Second Ground for Relief: *Ineffective Assistance of Counsel*

In his second ground for relief, Billenstein claims that he was denied his Sixth Amendment right to the effective assistance of counsel.  (Doc. No. 1 at 6.)  He provides only this brief statement of the bases for this claim:  "Failure to Suppress, Failure to advise that certain counts carried Mandatory Term of Incarceration, Failure to Orally Advise that Petitioner would be ineligible for Judicial Release, Failure to Advise

10

regarding Elements of Post-Release Control and Mandatory Operator's License Suspensions, Unlawful Imposition of Consecutive Sentences, Ineffective Counsel regarding violation of Miranda warnings." (*Id.*) The State contends that this claim is procedurally defaulted because the grounds for the claim as stated above were never fairly presented to state courts. (Doc. No. 9 at 25-26.)

Billenstein raised an ineffective-assistance claim on direct appeal in state court similar to his habeas claims based on trial counsel's "[f]ailure to [s]uppress" or "violation of *Miranda* warnings." He presented this claim to the state appellate court as:

> The Appellant received ineffective assistance of counsel at the trial court because his counsel failed to include in the motion to suppress a branch relating to the violation of Appellant's Miranda [*sic*] rights and the invalidity of Appellant's subsequent consent for a blood and urine sample.

(Doc. No. 9-1 at Ex. 16, 4.) His entire argument supporting this claim in his appellate brief was:

> Any reasonable defense counsel would have raised the issue of the invalidity of the consent for the urine/blood draw of samples in light of the prior violation of Appellant's Miranda [*sic*] rights. Appellant has established both the ineffective assistance of counsel and the fact that the urine/blood sample should have been suppressed as a result of the taint of the violation of Miranda [*sic*] rights.

(*Id.* at 19.)

The state appellate court, which characterized the claim as based on counsel's failure to "challenge the validity of Billenstein's consent for the blood and urine samples," denied the claim on its merits. *Billenstein*, 2014 WL 295850, at *17. It found:

> Billenstein's statements to Officer Speckman were not made in a custodial interrogation, thus there was no *Miranda* violation. Further, Officer Etgen did Mirandize Billenstein before obtaining oral consent for the blood and urine specimens. Thus, it seems unlikely had Billenstein's trial counsel raised the issue of valid consent, that it would have been well-taken by the

11

> trial court. Thus, even if Billenstein had argued prejudice in his brief, his assignment of error would still be meritless.

*Id.* at *18.

In his jurisdictional memorandum to the Ohio Supreme Court, Billenstein stated his ineffective-assistance claim as:

> It is ineffective assistance of counsel not to contest the validity of a defendant's *Miranda* waiver and consent for chemical testing, where the defendant is in the hospital, escorted by law enforcement officers, and being treated for a severe injury.

(Doc. No. 9-1 at Ex. 21.) He argued,

> In the case at bar, it is clear that Mr. Billenstein did not knowingly, voluntarily, and intelligently waive his *Miranda* rights. First and foremost, Mr. Billenstein's physical and mental condition prevented him from making a valid waiver. At the time he was asked to consent to having his blood drawn and to provide a urine sample, Mr. Billenstein was in obvious shock from the accident. Even Deputy Etgen testified that when he went to read Mr. Billenstein his *Miranda* rights, Mr. Billenstein was "very upset and distraught. His hands were visibly burnt." . . . Similarly, Patrolman Speckman testified that "[Mr. Billenstein] was very upset. He . . . was crying, very upset about the matter." . . . Additionally, . . . Mr. Billenstein had consumed a substantial quantity of alcohol. . . . Likewise, Mr. Billenstein's age and lack of familiarity with the criminal justice system hindered his ability to understand the nature of his rights or the consequences of waiving them.

(*Id.* at 261-62 (citations omitted).) The Ohio Supreme Court denied jurisdiction. (Doc. No. 9-1 at Ex. 23.)

The State argues that the ineffective-assistance claim Billenstein presented to the Ohio Supreme Court is "both different and far more extensive that [*sic*] the brief reference in the state Court of Appeals." (Doc. No. 9 at 28.) It explains that in the state appellate court, Billenstein's claim focused on the "invalidity of [his] consent" to the blood and urine samples being drawn *"in light of the prior violation of [his] Miranda*

12

*rights,*" referring to statements he made to Officer Steckman before he was read his *Miranda* rights; while in the Ohio Supreme Court, Billenstein challenged the validity of Billenstein's waiver of his *Miranda* rights because of his physical and emotional condition at the time. (*Id.*)

The Court disagrees. Billenstein presented a similar factual and legal basis for his claim to both state courts. Whether he focused his argument on the alleged *Miranda* violation that occurred when Officer Steckman questioned him before the blood and urine samples were taken from him or the validity of his waiver of his *Miranda* rights given his physical and emotional state at the time, the claim remained essentially the same: that his "consent" to have blood and urine drawn for testing was "invalid" and counsel therefore should have sought to have the tests results suppressed. *Cf. Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004 ) (habeas petitioner fairly presents to state court the substance of his habeas claim if he presents "both the factual and legal basis for his claim," as well as "the same claim under the same theory." (internal quotation marks omitted)). This ineffective-assistance sub-claim, therefore, is preserved for federal habeas review.

The State is correct, however, that Billenstein's remaining ineffective-assistance sub-claims – alleging counsel's failure to advise him about potential sentencing for his offenses and to move to suppress other evidence based on a *Miranda* violation – are procedurally defaulted. Those claims arise out of the record of proceedings in the trial court. Billenstein, therefore, could have raised them on direct appeal but did not. Under Ohio law, *res judicata* now prohibits him from raising the sentencing and ineffective-assistance claims in any post-conviction proceeding. *See State v. Cole*, 2

13

Ohio St. 3d 112, 113 (Ohio 1982); *State v. Perry*, 10 Ohio St. 2d 175 (Ohio 1967) (holding that *res judicata* bars a criminal defendant from raising in post-conviction proceedings those claims that could have been raised on direct appeal). Thus, there are no longer any state-court remedies still available to Billenstein with respect to these ineffective-assistance sub-claims, and this Court may deem them procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, Billenstein does not offer any argument regarding either the cause for, or prejudice resulting from, his procedural default of the claims. Nor does he contend that he is actually innocent to excuse his procedural default. Billenstein's claim of ineffective assistance of counsel, therefore, is procedurally defaulted with the exception of his claim relating to counsel's failure to move to suppress the results of the blood and urine tests.

**C.     Cognizability**

**Petitioner's First Ground for Relief:  *Cumulative Error***

Billenstein's first ground for relief asserts that cumulative errors "throughout [the] proceedings" resulted in a denial of his due process rights. (Doc. No. 1 at 5.) He specifies two "instances of cumulative errors" in support of this claim:  (1) the trial court's refusal to suppress statements he made to police at the hospital shortly after the car accident, which he contends violated his *Miranda* rights; and (2) the trial court's failure to advise him of all the penalties that would result from his no-contest plea, which

14

he argues rendered his plea unknowing and involuntary.  (*Id.*)

The State correctly argues that Billenstein's cumulative-error claim is not cognizable on habeas corpus review.  (Doc. No. 9 at 16.)  The Sixth Circuit repeatedly has held that "the law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."  *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).  *See also  Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)*; Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011).  Thus, Billenstein is not entitled to habeas relief based on his claim of cumulative trial error.[2]

---

[2]  Even if Billenstein had presented as independent grounds for habeas relief the two errors he specifies in support of his cumulative-error claim, those claims would fail.  He raised both his *Miranda* and plea-voluntariness claims on direct appeal in state court, where they were adjudicated on the merits.  *See Billenstein*, 2014 WL 295850, at \*\*10-15.  The claims, therefore, are subject to AEDPA deference.  28 U.S.C. § 2254(d). To ensure that criminal defendants are accorded their Fifth Amendment right against self-incrimination, the Supreme Court held, in *Miranda v. Arizona*, 384 U.S. 436 (1966), that a suspect subject to a "custodial interrogation" must first be given notice of his right against self-incrimination.  *Id.* at 478–79.  Statements elicited in noncompliance with this rule generally may not be admitted into evidence in a criminal trial.  *Id.* at 479.  This is a mixed question of law and fact.  *Thompson v. Keohane*, 516 U.S. 99, 102, 112 (1995). Billenstein contended that he was "in custody" at the hospital because of the seriousness of the accident and because the police accompanied him to the hospital, but he was not advised of his rights under *Miranda* and his statements to Officer Steckman, therefore, were not admissable.  *Billenstein*, 2014 WL 295850, at \*12.  The state court disagreed, concluding that Billenstein's statements to Officer Steckman were not made in a custodial interrogation because "Officer Steckman's interview with Billenstein was short in duration, as he only asked Billenstein two questions, . . . [and] took place in a hospital, and Billenstein was unrestrained the entire time."  *Id.* Billenstein offers no legal or factual argument to show that the state court's decision was an unreasonable application of Supreme Court precedent or determination of facts under § 2254(d), and this Court can find none.  *See, e.g.*, *Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000) ("Given the credibility assessment required to make [a *Miranda*] determination and the deference due to state-court factual findings under AEDPA, we cannot say that the trial court's finding was unreasonable . . . .").  Billenstein's plea claim similarly fails.  To be valid, a guilty or no contest plea must be both "voluntary" and "intelligent."  *Brady v. United States*, 397 U.S. 742, 747 n. 4 (1970).  In order for such a plea to be voluntarily and intelligently made, the defendant must be aware of the

### V. The Merits of Petitioner's Remaining Claim

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  See *Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor,* 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  See *Carey*, 549 U.S. at 74.

---

"relevant circumstances and likely consequences" of his plea.  *Id.* at 748.  Whether a guilty or no contest plea is voluntary is a mixed question of fact and law, but state-court historical factual findings underlying the determination are entitled to a presumption of correctness under § 2254(d).  *Marshall v. Lonberger,* 459 U.S. 422, 431-32 (1992).  The state appellate court found that Billenstein's plea was intelligent and voluntary because: the trial court advised Billenstein of the sentences for the offenses to which he was entering a no contest plea; Billenstein was aware of the sentences because he signed a written plea agreement containing that information; and Billenstein told the court he understood the terms of the plea agreement and had no questions.  *Billenstein*, 2014 WL 295850, at *14.  The state court's decision was supported by the record, and Billenstein has not shown that it is based on clearly erroneous factual findings or is contrary to, or an unreasonable application of, Supreme Court precedent.

16

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

Williams, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith,* 539 U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been objectively unreasonable."  *Id.* at 520-21 (internal citations and quotation marks omitted).  This Court applies this deferential standard of review to the state courts' rulings on Billenstein's second ground for relief.

**Petitioner's Second Ground for Relief:  *Ineffective Assistance of Trial Counsel / Failure to Move to Suppress Blood and Urine Test Results***

In his second ground for relief, Billenstein argues he was denied his Sixth

17

Amendment right to effective assistance of counsel because his trial counsel failed to move to suppress the results of blood and urine tests based on his invalid consent to the testing. (Doc. No. 1 at 6.) The State contends this claim lacks merit. (Doc. No. 9 at 33.) As explained above, Billenstein raised this claim in state courts, where it was adjudicated on the merits, and it is preserved for federal habeas review.

The Supreme Court announced a two-prong test for habeas claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the petitioner must demonstrate that counsel's errors were so egregious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id* at 687. Second, the petitioner must show that he or she was prejudiced by counsel's errors. To do this, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Court has observed that the standards imposed by *Strickland* and § 2254(d) are both "highly deferential," so that in applying them together, "review is 'doubly' so." *Harrington v. Richter,* 562 U.S. 86, 105 (2011). "*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (quoting *Strickland,* 466 U.S. at 689-90).

If a petitioner fails to prove either deficiency or prejudice, his ineffective assistance claim will fail. *Strickland,* 466 U.S. at 687. Ineffective assistance claims are mixed questions of law and fact. *Id.* at 698. Habeas courts review such claims, therefore, under AEDPA's "unreasonable application" prong, § 2254(d)(1). *See, e.g.,*

18

*Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cir. 2003).

The state appellate court was the last state court to address Billenstein's ineffective assistance claim based on his *Miranda* waiver.  After correctly setting forth the *Strickland* standard, the court first noted that Billenstein made no argument showing he was prejudiced by his trial counsel's performance.  *Billenstein*, 2014 WL 295850, at *17.  Even so, the court addressed the issue and found no prejudice, reasoning:

> Billenstein's statements to Officer Speckman were not made in a custodial interrogation, thus there was no *Miranda* violation. Further, Officer Etgen did Mirandize Billenstein before obtaining oral consent for the blood and urine specimens. Thus, it seems unlikely had Billenstein's trial counsel raised the issue of valid consent, that it would have been well-taken by the trial court. Thus, even if Billenstein had argued prejudice in his brief, his assignment of error would still be meritless.

*Id.* at *18.

The state appellate court was not unreasonable in determining that Billenstein failed to demonstrate prejudice resulting from trial counsel's failure to move to suppress the results of blood and urine tests based on his invalid consent to the testing.  As the state court correctly noted, Billenstein expressly consented to providing the blood and urine samples.  At the suppression hearing, a hospital medical laboratory scientist testified Billenstein gave her his verbal consent and signed a consent form before she drew his blood and did not object when she asked for a urine sample.  *Id.* at **2-3.  Moreover, Officer Etgen testified he read Billenstein his *Miranda* rights and asked for a voluntary blood sample, to which Billenstein agreed.  *Id.*  Officer Etgen also testified he told Billenstein that "he was still Mirandized, and . .. asked [Billenstein] if he would give a consent to search for a

19

urine sample," which he did. *Id.* Officer Speckman confirmed at the hearing that Billenstein gave his verbal consent to providing blood and urine samples. *Id.* at *5.

Based on the above, and applying the doubly deferential standard applied to ineffective assistance of counsel claims on federal habeas review, the Court finds the state appellate court reasonably concluded Billenstein was not prejudiced by his trial counsel's failure to move to suppress the results of blood and urine tests based on Billenstein's allegedly invalid consent. Accordingly, the state appellate court's rejection of Billenstein's ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

Petitioner's second ground for relief is, therefore, without merit.

## V. Conclusion

For all the reasons set forth above, the petition should be DISMISSED.


Date: July 8, 2016                    /s/ *Nancy A. Vecchiarelli*
                                      United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**